**RODEWAY INNS OF AMERICA, INC.,**
a corporation,

and

Madesco Investment Corporation, a corporation, Appellants,

v.

Maurice B. FRANK et al., Appellees.

No. 75–1563.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1976.

Decided Sept. 13, 1976.

Rehearing En Banc Denied
Oct. 12, 1976.

Theodore D. Ponfil, Clayton, Mo., for appellants; Eugene Portman, St. Louis, Mo., on brief.

Barrie L. Goldstein, Economic Litigation Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for appellee; Rex E. Lee, Asst. Atty. Gen., Donald J. Stohr (former U. S. Atty. effective May 15th, Barry A. Short, U. S. Atty.), and Leonard Schaitman, Attorney with Dept. of Justice, on brief.

Gary S. Heifetz, St. Louis, Mo., for private appellees; Richard J. Sheehan, St. Louis, Mo., on brief.

Before BRIGHT, ROSS, and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

When the owners of the South Tower of the Mansion House Center, an apartment building located in an urban renewal area of downtown St. Louis, Missouri, began converting the Tower into a hotel, competitor hotel owners filed this lawsuit against the owners of the South Tower and the Secretary of the Department of Housing and Urban Development (HUD), the latter having approved the conversion decision. The plaintiffs sought an injunction, asserting that, because the construction of this building had been financed through loans insured by HUD, the conversion to a hotel was barred by specific provisions of the National Housing Act. Plaintiffs also complained of unlawful procedures relating to HUD's consent to the conversion decision and that the conversion action violated state law and the ordinances of St. Louis,

Missouri. The district court dismissed the action for failure to state a claim of violation of any provision of the National Housing Act and for lack of standing to raise the remaining claims. The plaintiffs brought this appeal. We affirm.

Plaintiffs-appellants, Rodeway Inns of America, Inc. and Madesco Investment Corporation, own and operate hotels within the City of St. Louis. They allege that conversion of the apartment tower into a hotel will subject them to competitive injury through the diversion of customers. Defendant-appellee Carla A. Hills, Secretary of HUD, is responsible for the administration of the NHA and presently holds the mortgage to the apartment tower. Subject to HUD regulation, the tower is owned and operated by the private mortgagors, defendants and appellees in this action.[1]

Appellants level broad-based attacks against the conversion decision. The district court divided these challenges into five groups:

1) The Secretary's conversion decision violates the National Housing Act, 12 U.S.C. § 1701 *et seq.*, especially §§ 1715k(d)(3)(B)(iv) and 1731b, HUD regulations, and long-standing HUD policy.

2) The Secretary's decision to allow conversion is improper and unauthorized by statute because (a) plaintiffs were not afforded an opportunity for a hearing on the decision; (b) the decision was arbitrary and capricious; and (c) the decision resulted from improper methods used by the private defendants to persuade the Secretary to allow conversion.

3) The private defendants through misrepresentation induced the Secretary to consent to a Third Modification Agreement which provided for the deferment and capitalization of principal and interest payments then outstanding and those which would become due during the period August 1, 1972 through July 31, 1977. Plaintiffs also challenge the Secretary's decision to permit the lien of its mortgage to become junior to a newly arisen bank claim and assert that the Secretary has failed to enforce certain duties of the private defendants imposed by the mortgage and ancillary agreements.

4) The conversion violates St. Louis City Ordinance No. 50033; Chapter 353, Revised Statutes of Missouri; and Article I, Section 10 of the Missouri State Constitution.[2]

5) The actions of the Secretary in this matter violate the equal protection and due process clauses of the fourteenth amendment to the Constitution of the United States.[3]

As to the first claim, the court determined that appellants (Competitors) failed to state any claim of violation of the National Housing Act, HUD regulations or HUD policy. As to the portions of the second, third, and fourth groups which remain in issue on appeal, the district court denied standing to these Competitors. For reasons stated below, we agree with the district court's determination.

---

1. The following are the private defendants-appellees: Maurice B. Frank and Mansion House Center South Redevelopment Corporation, general partners of Mansion House Center South Redevelopment Company, a limited partnership; Frank and Ocean Sea Breeze, Inc., general partners of Mansion House Motor Hotel Company, a limited partnership; and Remsco Management, Inc.

The fee interest in the land underlying the tower is held by the General Electric Pension Trust and is unaffected by the present action.

2. The claim based on Article I, Section 10 of the Missouri Constitution has been abandoned on appeal.

3. This constitutional claim is not pressed on appeal. As to this claim, the district court said:

Plaintiffs' fifth claim, for violation of the Fourteenth Amendment, must be dismissed for the reason that no economic loss sustained by the plaintiffs is alleged or shown to be caused by a direct intrusion, encroachment or appropriation of plaintiffs' property. *Woodland Market Realty Co. v. City of Cleveland*, 426 F.2d 955, 958 (6th Cir. 1970). There is no factual allegation or showing that plaintiffs were not afforded equal protection of law. This claim will be dismissed for failure to state a claim upon which relief can be granted.

In resolving the threshold questions of standing and failure to state a claim, the district court relied upon additional factual background, which we quote:

The Mansion House Center was constructed as an urban blighted area redevelopment project authorized by [St. Louis] City Ordinance No. 50033 (approved December 5, 1963), pursuant to Chapter 353, Revised Statutes of Missouri. This ordinance provided for development within the City in an area bounded by Third Street, Chestnut Street, Fourth Street, and Washington Boulevard. It further provided for the erection of three twenty-eight story apartment buildings (the three towers of the Mansion House Center) each containing approximately three hundred thirty-six apartment units, and of four commercial and office buildings not higher than ten stories.

In 1967 the Secretary insured the leasehold mortgage and note liability that encumbered the Mansion House Center south tower, pursuant to § 220 of the National Housing Act, as amended, 12 U.S.C. § 1715k (urban redevelopment). In 1971 the mortgagor defaulted on the note liability. The mortgagee-lender, John Hancock Mutual Life Insurance Company, applied for and in 1972 received $12,015,769.07 in mortgage insurance proceeds from the Secretary. In exchange, on February 11, 1972, the mortgagee assigned the note and the mortgage to the Secretary. Thereafter, the Secretary decided to allow the mortgagor to operate the south tower as a hotel instead of as an apartment complex as it had been operated originally. (Footnotes omitted).

The district court also observed that plaintiffs own or operate hotels within 50 miles of the Mansion House South Tower and determined that appellants alleged sufficient economic loss through the diversion of customers to the newly-converted hotel to create a justiciable controversy.

I. *Specific Violations of the NHA.*

We initially address the appellees-defendants' assertion that appellants lack standing even to assert their claim alleging specific violations of the National Housing Act.

Section 513 of the National Housing Act, 12 U.S.C. § 1731b, provides in pertinent part:

(a) The Congress declares that it has been its intent since the enactment of this chapter that housing built with the aid of mortgages insured under this chapter is to be used principally for residential use; and that this intent excludes the use of such housing for transient or hotel purposes while such insurance on the mortgage remains outstanding.

(b) Notwithstanding any other provisions of this chapter, no new, existing, or rehabilitated multifamily housing with respect to which a mortgage is insured under this chapter shall be operated for transient or hotel purposes unless [exceptions inapplicable].

\* \* \* \* \* \*

(i) Any person owning or operating a hotel within a radius of fifty miles of a place where a violation of any provision of this section has occurred or is about to occur, or any group or association of hotel owners or operators within said fifty-mile radius, at his or their sole charge or cost, may petition any district court of the United States or the district court of any Territory or other place subject to United States jurisdiction within whose jurisdictional limits the person doing or committing the acts or practices constituting the alleged violation of this section shall be found, for an order enjoining such acts or practices[.]

\* \* \* \* \* \*

The statute specifically declares that housing built with the aid of federally insured mortgages under the NHA is to be principally residential while the insurance remains outstanding. Congress in this statute has conferred a specific right of action on competing hotel owners or operators to seek injunctive relief against acts or practices "constituting the alleged violation of this section \* \* \*."

▮ Thus as to claim 1, the record discloses that these Competitors claiming injury assert a right of action specifically conferred by statute. These allegations establish standing. As the Supreme Court has said:

It is, of course, true that "Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions," *Sierra Club v. Morton*, 405 U.S. 727, 732 n. 3 [92 S.Ct. 1361, 1365, 31 L.Ed.2d 636] (1972). But Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. See, *e. g., Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 212 [93 S.Ct. 364, 368, 34 L.Ed.2d 415] (1972) (White, J., concurring); *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 6 [88 S.Ct. 651, 654, 19 L.Ed.2d 787] (1968). [*S. v. D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).]

Moreover, plaintiffs-appellants' allegations of economic injury are sufficient to meet the demands of Art. III, *see Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 151–53, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Thus, the district court properly granted these competitor hotels standing to assert that defendants' conduct violated the National Housing Act, including HUD regulations and policy.

▮ The district court, however, determined on the merits that the facts alleged make out no statutory violation. The district court held that the proscriptions of the statute apply only so long as the mortgage insurance remains *outstanding.* The language of the statute, reinforced by the legislative history, establishes the correctness of that conclusion. Where, as here, the Government has paid the insurance proceeds to the initial mortgagee and has become the successor mortgagee, its conduct in authorizing the mortgaged premises to operate as a hotel does not violate any provision of the NHA.

Congress adopted the provisions of § 1731b in 1954, in response to complaints by the hotel industry that the government agency supervising the National Housing Act (then the Federal Housing Administration) had failed to enforce strictly the obligation of insured mortgagors to refrain from operating hotels. Industry representatives testified before Congress concerning the extent of violations and suggested possible remedies. Mr. Arthur J. Packard, chairman of the Board of the American Hotel Association, urged that

it is imperative that a way be found to incorporate definite safeguards into the language of the statute, to insure the fact that FHA will not tolerate transient rentals in any rental housing *so long as the mortgage runs to the government.* [Hearings before the Senate Committee on Banking and Currency, March-April 1954, at 658 (emphasis added) (taken from Appellants' Br. at A–6).]

After considering this and other similar testimony, Congress adopted § 1731b. The introductory paragraph of this section declared the following:

(a) The Congress declares that it has been its intent since the enactment of this chapter that housing built with the aid of mortgages insured under this chapter is to be used principally for residential use; *and that this intent excludes the use of such housing for transient or hotel purposes while such insurance on the mortgage remains outstanding.* [§ 1731b (a) (emphasis added).]

The language limiting the application of the section to the period "while such insurance on the mortgage remains outstanding" does not appear to be a mere slip of the pen. Similar language appears elsewhere in the section. Section 1731b(b) additionally provides that "no * * * multifamily housing *with respect to which a mortgage is insured* under this chapter shall be operated for transient or hotel purposes [with certain exceptions]." (Emphasis added). Section 1731b(c) forbids insuring or extending the insurance of a mortgage

* * * unless (1) the mortgagor certifies under oath that *while such insurance remains outstanding* he will not rent, or permit the rental of, such housing * * *

for transient * * * purposes, and (2) the Secretary [has taken adequate steps to] prevent or terminate any use of such property or project for transient or hotel purposes *while the mortgage insurance remains outstanding.* (Emphasis added).

Other subsections of § 1731b establish enforcement mechanisms for §§ 1731b(a), (b), and (c). Section 1731b(i), previously quoted, *see* p. 762 *supra*, authorizes competing hotel owners or operators to act as private attorneys-general for the purpose of enjoining "a violation of any provision of this section." By its clear terms, "this section" applies only "while the mortgage insurance remains outstanding." In the present case the mortgage insurance has been terminated, the insurance benefits have been paid to the original mortgagee, and that mortgagee has assigned the mortgage to HUD. Thus, no right to relief exists under § 1731b.

Appellants also contend that HUD's own previously long-established interpretation of the National Housing Act accords with the construction of the statute offered by appellants. We reject this contention. The Regulatory Agreement between the mortgagor and HUD dated in April of 1964, provides:

> So long as the contract of mortgage insurance continues in effect, and during such period of time as the Commissioner shall be the *owner, holder* or reinsurer of the mortgage, . . . 4(a) . . . such accommodations shall not be rented for a period of less than thirty days. [Appellants' Br. 32–33, with appellants' emphasis added.]

The mortgagor's oath, prepared by HUD, states:

> In accordance with the stated intent of Congress and with the provisions of the *National Housing Act,* as amended . . . the undersigned hereby certifies:
>
> That so long as the mortgage covering the above-numbered project is *insured* or *held* under the provisions of the *National Housing Act,* as amended, no part of any building will be rented for a period of less than thirty days or operated in such a manner as to offer any hotel services to any tenant in the building or buildings. [Appellants' Br. 33, with appellants' emphasis added.]

The oath applies, however, only "so long as the loan is insured." 24 C.F.R. § 220.593.[4]

Similarly, the regulatory agreement quoted above applies while "the mortgage insurance continues in effect", not where, as here, the Commissioner [now Secretary] has paid the mortgagee's insurance claim.

■ While mortgage insurance remains outstanding, NHA housing may not be converted to hotel use. But no statute or regulation expressly bars such use when HUD becomes the lienholder after a mortgage insurance payout. Thus, the district court properly addressed and denied appellants' claim for relief resting upon alleged violations of specific provisions of the National Housing Act.

## II. *Standing as to Nonstatutory Claims.*

We next consider appellants' other federal claims—those not grounded upon a specific statutory violation. As we have mentioned, appellants contend that the decision to permit hotel use of the Mansion House South Tower was arbitrary and capricious, did not afford procedural due process to competing hotel owners, and was arrived at through misrepresentations and impermissible conduct within and outside of HUD, wrongfully inducing the agency decision

---

**4.** This regulation governing the oath reads:

> The borrower shall certify under oath, that so long as the loan is insured by the Commissioner, the borrower will not rent, permit the rental or permit the offering for rental of the housing, or any part thereof, covered by such loan for transient or hotel purposes. For the purpose of this certificate, the term rental for transient or hotel purposes shall mean:
>
> (a) Rental for any period less than 30 days; or
>
> (b) Any rental, if the occupants of the housing accommodations are provided customary hotel services such as room service for food and beverages, maid service, furnishing and laundering of linens and bellboy service.

under question. Appellants argue that they are entitled to judicial review of these claims under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702–706.

Relying on *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), appellants-plaintiffs assert that their interests arguably come within the "zone of interest" of the relevant statute, the National Housing Act, because at least two specific sections advert to the interests of competitors—§ 1731b, discussed in part I, and 12 U.S.C. § 1715k(d)(3)(B)(iv), which reads as follows:

> (d) To be eligible for insurance under this section a mortgage shall meet the following conditions:
>
>    \*     \*     \*     \*     \*     \*
>
> (3) The mortgage shall—
>
>    \*     \*     \*     \*     \*     \*
>
> (B) \* \* \* (iv) include such nondwelling facilities as the Secretary deems desirable and consistent with the urban renewal plan: *Provided,* That the project shall be predominantly residential and any nondwelling facility included in the mortgage shall be found by the Secretary to contribute to the economic feasibility of the project, *and the Secretary shall give due consideration to the possible effect of the project on other business enterprises in the community.* (Emphasis added).

Appellants argue that these statutes evidence a legislative intent to protect the interest of the competitor hotel operators—thus conferring standing upon them to challenge the administrative action. We disagree, as did the district court.

■ The question presented to us in these general federal claims asserted by appellants is whether the statute was designed to protect competitors, *Data Processing, supra* at 155, 90 S.Ct. 827, *citing Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968), *i. e.,* whether the competitors' interest is arguably within the zone of interests protected by the statute in question. In answering that question, it is necessary that we examine the National Housing Act as a whole, as well as the specific statutory provisions. *Barlow v. Collins,* 397 U.S. 159, 164–65, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

In *Barlow,* the Court examined the Food and Agricultural Act of 1965 as a whole to determine whether tenant farmers eligible for payments under the upland cotton program possessed standing to challenge an administrative regulation issued under that Act which allowed the tenants to assign their payment rights to their landlords. The Court found a "congressional intent that the Secretary protect the interests of tenant farmers," *id.* at 164, 90 S.Ct. at 836, and a similar intent expressed in the history of the specific statutory provisions under consideration.

Utilizing similar analysis, the district court examined the broad goals of the National Housing Act:

> The *overall* purposes of the National Housing Act do not include the regulation or protection of competition among hotel operators. The intentions of Congress regarding the Act have been variously described as the "aid[ing of] veterans and their families", *F.H.A. v. The Darlington, Inc.,* 358 U.S. 84, 87, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958), and the providing of decent homes for persons with low income. *Davis v. Romney, supra* [490 F.2d 1360]; at 1365 [3 Cir.]; *Thompson v. Washington,* 162 U.S.App.D.C. 39, 497 F.2d 626 (1973). Congress declared the purpose of § 220 of the Act (urban development) to be "to aid in the elimination of slums and blighted conditions and the prevention of the deterioration of residential property . . . ." 12 U.S.C. § 1715k(a).

■ We agree that appellants' assertion of standing derives no support from the general goals of the NHA. Sections 1715k(d)(3)(B)(iv) and 1731b do provide some protection to hotels from HUD-subsidized competition, but the zones of protection created by those two sections are limited to two specific situations: when the Secretary considers an initial application for

mortgage insurance (§ 1715k(d)(3)(B)(iv)), and when the mortgage insurance is outstanding (§ 1731b). We have neither situation here. We cannot conclude that two provisions which protect the interests of potential competitors in limited situations were intended by Congress to confer standing on competitors to challenge action taken under the NHA not falling within the areas protected by those two particular provisions. The overall intent of Congress was to aid home construction, not to protect hotel owners from the competitive impact of projects built with government-insured loans. The provisions protecting hotel owners are of limited application only; it is not our prerogative to expand the scope of hotel owners' interests beyond the zones of protection defined by Congress. *Cf. Clinton Community Hospital Corp. v. Southern Maryland Medical Center*, 510 F.2d 1037 (4th Cir. 1975), *cert. denied*, 422 U.S. 1048, 96 S.Ct. 2666, 45 L.Ed.2d 700 (1975) (competitive interests not with NEPA's zone of interests); *compare Warth v. Seldin*, 422 U.S. 490, 512–14, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), *with Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (White, J., concurring). It would be particularly anomalous to hold that competitors who fail to establish a claim under the specific cause of action afforded in § 1731b may nevertheless rely upon that statute for standing to raise other claims. Courts must exercise caution in expanding the remedies expressly provided by Congress. *See National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *Summers v. United States*, 510 F.2d 123 (8th Cir.), *cert. denied*, 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 75 (1975). We conclude, therefore, that the competitor hotel owners cannot base their standing upon the specific statutory provisions which they cite. Their general economic interest as competitors does not afford standing. *See Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); *Tennessee Power Co. v. TVA*, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); *Berry v. Housing and Home Finance Agen-*cy, 340 F.2d 939 (2d Cir. 1965); *cf. Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 5–7, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968); *Clinton Community Hosp., supra*, 510 F.2d at 1038.

The *Data Processing* "zone of interests" requirement reflects a policy of judicial self-restraint relating to standing, apart from the bare demands of Art. III of the Constitution. Whether a litigant possesses standing must be determined from the intent of Congress. Here we can find no Congressional intent expressed in the provisions of the NHA to confer upon hotel owners the right generally to obtain judicial review of administrative decisions, apart from the specific statutes affording certain hotel operators the privilege to litigate under narrow and specific circumstances. We hold the district court properly determined that appellants did not come within the zone of interests entitling them to judicial review of general administrative decisions made by HUD.

### III. *Claims Resting Upon State Law.*

■ Exercising its discretion to invoke pendent jurisdiction, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the district court considered the claim that changing the South Tower into a hotel violates St. Louis City Ordinance No. 50033. The district court held that the appellants lack standing to assert violations of the ordinance. The parties concede that under Missouri law a zoning ordinance confers standing upon adjoining property owners to contest changes in use of property, *Allen v. Coffel*, 488 S.W.2d 671 (Mo.App.1972); *Stickelber v. Board of Zoning Adjustment*, 442 S.W.2d 134 (Mo.App.1969).

The ordinance in question approved the redevelopment plan under Missouri's Urban Renewal Law, and authorized the city officials to enter into an appropriate contract with the developers, which, among other things, limits the value of the real estate for tax purposes. Appellants cite no cases from Missouri or any other jurisdiction holding that an urban renewal ordinance should be deemed equivalent to zoning ordi-

nances for purposes of determining standing to sue. *Gibson & Perin Co. v. City of Cincinnati*, 480 F.2d 936 (6th Cir.), *cert. denied*, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973), supports the trial court's decision that the ordinance in question does not provide for zoning of property and therefore does not confer standing upon adjoining property owners.

The opinion of the district court on matters of state law is entitled to great weight here. *See Sherrill v. Royal Industries, Inc.*, 526 F.2d 507, 510 (8th Cir. 1975); *Koppinger v. Cullen-Schiltz & Associates*, 513 F.2d 901, 909 (8th Cir. 1975); *Bassler v. Arrowood*, 500 F.2d 138 (8th Cir. 1974), *cert. denied sub nom. Lee v. Arrowood*, 419 U.S. 1116, 95 S.Ct. 796, 42 L.Ed.2d 815 (1975). We see no clear error in the court's conclusion and therefore decline to disturb it on appeal.

Appellants also assert that operation of the hotel at the Mansion House constitutes unfair competition cognizable under state law. As stated in their brief, appellants argue:

> Plaintiffs' position is simple and to the point. Legitimate businessmen who have spent years of their lives, risked their fortunes, however great or small, and built their business on the foundation of observance of the law are entitled to the aid of a court of equity to protect their business interests against assault from individuals and government officials who, through fraud, deceit, misrepresentation, chicanery, theft, corruption and perversion of the governmental processes gain or are about to gain an unconscionable [sic] economical business advantage and thereby place themselves in a position to unfairly compete for the ultimate prize, i. e., the customer, consumer or patron. [Appellants' Br. 45.]

In rejecting this unfair competitor claim, the district court said:

> Plaintiffs argue orally and in their brief that they have alleged a claim of unfair competition, based upon the conduct of the defendants in obtaining, and upon the Secretary's conduct in granting, the conversion approval. A claim of unfair competition must be founded upon the common law of Missouri. *Fry v. Layne-Western Company*, 282 F.2d 97, 99 (8th Cir. 1960). Plaintiffs have cited no judicial precedent in Missouri supporting their cause of action for unfair competition. The Court does not construe plaintiffs' amended complaint as stating such a claim. The term "unfair competition" is used by plaintiffs for the purpose of stating a claim that 12 U.S.C. § 1731b, *infra*, was violated. Assuming that plaintiffs seek to allege unfair competition, as they argue, the Court is of the opinion that they fail to state a claim upon which relief can be granted. As shown below, plaintiffs either lack standing or fail to state a claim regarding those acts of the defendants upon which their claim of unfair competition depends.

Thus, the district court appears to have construed this aspect of the complaint as grounded upon an allegation that appellees violated § 1731b in the conversion decision. We have disposed of the § 1731b violation in part I of this opinion. On appeal, however, appellants stress that the claim for unfair competition is one asserted solely under state law arising from improper conduct of appellees, not specifically violative of any federal statute.

Because the district court did not address the issue of unfair competition in this context, we also do not reach the claim.

After reading appellants' amended complaint, we have some doubt that it alleges any claim of unfair competition against the nongovernment appellees, separate and apart from the alleged violation of § 1731b. The general language of the complaint justified the district court's reading of the unfair competition allegations as dependent upon the alleged violation of 12 U.S.C. § 1731b.

Accordingly, we affirm.