G. Hugh WAMBLE, et al., Plaintiffs,

v.

Terrell H. BELL, Secretary of the Department of Education, et al., Defendants.

No. 77–0254–CV–W–8.

United States District Court, W. D. Missouri, W. D.

May 4, 1982.

G. Hugh Wamble, pro se.

Samuel J. Molby, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., Lee Boothby, Berrien Springs, Mich., for plaintiffs-intervenors.

F. James Foley and Robert Nesler, U. S. Dept. of Justice, Washington, D. C., for defendants.

Charles H. Wilson and Scott M. Matheson of Williams & Connelly, Washington, D. C., Louis C. DeFeo, Jr., Jefferson City, Mo., for defendants-intervenors.

## MEMORANDUM AND ORDER

STEVENS, District Judge.

This matter is before the court on the federal defendants' motion for partial judgment on the pleadings. The parties have thoroughly briefed the issues raised in the motion, and the court will discuss the standing of plaintiff and plaintiff-intervenors to pursue claims based on the First, Fifth, and Tenth Amendments and to seek judicial review of the decision of the federal defendants to invoke the provisions of 20 U.S.C. § 2740(b). The motions relating to discovery, also pending at this time, will be discussed in a separate order.

### Facts

This action, commenced by plaintiff who filed a complaint *pro se* on April 4, 1977, challenges the constitutionality of Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C.S. §§ 2701 *et seq.* (Law.Co-op.1981) (hereinafter "Title I"). Title I provides federal financial assistance for remedial educational programs for educationally and economically deprived children, and delineates the responsibilities of the United States Secretary of Education, participating states, and local educational agencies (LEA).

Plaintiff alleges that the Title I program as it has been implemented in Missouri violates the Establishment Clause of the First Amendment, deprives him of rights without due process in contravention of the Fifth Amendment, and offends the concept of residual powers embodied in the Tenth Amendment. Plaintiff also complains that the then Commissioner of Education acted arbitrarily and capriciously in his interpretation and application of the so-called "bypass" provisions of Title I which permit him to arrange for the provision of Title I services to children enrolled in private schools.

On August 29, 1977, the Honorable William R. Collinson of this court permitted the intervention as defendants of thirteen individuals who are parents of nonpublic school students receiving Title I services. By order of September 13, 1978, the court approved the intervention as plaintiffs of 39 individuals who are parents of public school pupils entitled to Title I benefits. Upon the

transfer of this case to this division, counsel for plaintiff-intervenors, who have raised no causes of action separate from or in addition to the declaratory and injunctive relief sought by plaintiff, was instructed to take the lead in orchestrating and presenting the plaintiffs' case. Unless it is necessary to distinguish between plaintiff and plaintiff-intervenors, the court will employ the term "plaintiffs" in this discussion.

The federal defendants' motion for partial judgment does not question the appropriateness of the plaintiffs' challenge to the Title I program as it currently operates in the State of Missouri. At pages 2 and 3 of the Suggestions in Support of that motion, the federal defendants identify five issues which they concede may be raised by plaintiffs as taxpayers litigating an alleged violation of the First Amendment limitations on the congressional exercise of taxing and spending power under Article I, § 8, of the Constitution. Federal defendants urge this court to exclude all other aspects of plaintiffs' complaint because, they contend, the plaintiffs lack standing to assert those claims. At the request of counsel for plaintiff-intervenors, this court deferred a ruling on this motion until the United States Supreme Court issued its opinion in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* —— U.S. ——, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) and the parties filed supplemental briefs following that decision.

### Standing

The federal defendants' challenge to the plaintiffs' standing is couched in terms of a motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. By its very language, 12(c) requires this court to confine its inquiry to the face of the pleadings or to convert the motion into one made under Rule 56 if "matters outside the pleadings are presented to and not excluded by the court." The parties have not briefed the issue as though it had been converted into a Rule 56 motion nor will the court treat it as one. However, the characterization of this motion is somewhat troublesome

since the court has received background and other material not anticipated within the context of Rule 12(c).

The label to be applied to motions regarding standing is discussed in *A Litigation Primer for Standing Dismissals,* Garvey, 55 N.Y.U.L.Rev. 545 (1980). Garvey indicates that the constitutionally mandated concept of standing, which is grounded in Art. III of the Constitution, is jurisdictional and a dismissal motion based thereon should be made pursuant to Rule 12(b)(1), i.e., lack of subject matter jurisdiction. On the other hand, standing challenges which rely on the prudential considerations formulated by the United States Supreme Court in recent years, may turn "on the nature and source of the claim asserted" and thus may be made in accordance with Rule 12(b)(6), i.e., failure to state a claim. *Id.* at 564 (quoting *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Rule 12(h)(2), Fed.R.Civ.P., permits a defense of failure to state a claim to be raised by motion for judgment on the pleadings as defendants have done here. However, the federal defendants have not indicated to the court that only one aspect of standing is being questioned, so the court will assume both constitutional and prudential aspects are involved and the motion will be treated as a suggestion that this court lacks subject matter jurisdiction of a portion of the plaintiffs' claims. Rule 12(h)(3), Fed.R.Civ.P.

This inquiry into standing is dictated "[b]ecause ... it is a 'threshold requirement' which must be satisfied before the federal court can take cognizance of any claim." *Evans v. Lynn,* 537 F.2d 571, 590 (2d Cir. 1975) (footnote omitted). In determining whether a particular plaintiff has standing, this court must rely upon the conceptual definitions provided by the United States Supreme Court. In one of its major opinions dealing with the requirements of standing, *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the court reexamined the components of standing and indicated that courts must consider both "constitutional limits on federal court jurisdiction and prudential limits upon its exercise." 422 U.S. at 498, 95 S.Ct. at 2204.

That dichotomy appears in subsequent cases. As previously indicated, the constitutional requirements are rooted in Art. III of the Constitution which requires the existence of a case or controversy in order to vest jurisdiction in the federal court, whereas the prudential limitations focus the court's attention upon the plaintiffs—whether plaintiffs are "proper proponents of the particular legal rights on which they base their suit." *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). *See also, Regents of University of Minnesota v. National Collegiate Athletic Association*, 560 F.2d 352 (8th Cir. 1977).

The constitutional characteristics of standing were reviewed in *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978):

> [T]he parties seeking to invoke the court's jurisdiction [must] have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." ...
> [T]his requirement of a "personal stake" has come to be understood to require not only a "distinct and palpable injury," to the plaintiff, *Warth v. Seldin*, 422 U.S. 490, 501 [95 S.Ct. 2197, 2206, 45 L.Ed.2d 343] (1975), but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct.

438 U.S. at 72, 98 S.Ct. at 2629 (cites omitted). To be recognizable, the "distinct and palpable injury" does not have to be of an economic nature. *Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). A third constitutional component, developed in *Warth*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343, requires that the relief requested from the judiciary be capable of redressing the injury claimed by the plaintiff. "Our recent cases have required no more than a showing that there is a 'substantial likelihood' that the relief requested will redress the injury claimed to satisfy [this] ... prong of the constitutional standing requirement." *Duke Power*, 438 U.S. at 75, n.20, 98 S.Ct. at 2631, n.20.

The federal defendants have attacked the standing of plaintiff and plaintiff-intervenors alike and have not made a distinction between the differences, if any, in the type of standing relied upon by Wamble and by the parents. For purposes of this analysis, that distinction must be drawn. Therefore, the court will examine the status of plaintiff and plaintiff-intervenors separately to determine if the constitutional requirements of standing have been met, and if so, whether any prudential limitations warrant a dismissal of that portion of the plaintiffs' action.

> "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2206.

*The Standing of Plaintiff as a Taxpayer*

As previously noted, a separate basis for standing—that plaintiff is a taxpayer—has been conceded by the federal defendants. Defendants indicate that plaintiff Wamble can satisfy the requirements of taxpayer standing as developed in *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), so as to permit his challenge to the daily operational aspects of the Title I program in Missouri. The parameters of those requirements have been defined by a two-pronged nexus text:

> First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution.... Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. [T]he taxpayer must show that the challenged enactment exceeds specific consti-

tutional limitations imposed upon the exercise of the congressional taxing and spending power.

*Flast v. Cohen,* 392 U.S. at 102–103, 88 S.Ct. at 1953–54.

■ The defendants ask this court to distinguish the plaintiff's challenge to the exercise of congressional taxing and spending power manifested in the Title I program from the portion of plaintiff's action, which federal defendants say, challenges the "regulatory actions under" Title I. Their argument purports to rely on *Flast* for this distinction; however, the reference in *Flast* to regulatory statutes does not support that argument. The warning of *Flast* is that "[i]t will not be sufficient [to establish a link between taxpayer status and the legislative enactment challenged] to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute." 392 U.S. at 102, 88 S.Ct. at 1953. Title I is not an "essentially regulatory" statute. Therefore, since taxpayer Wamble is challenging the constitutionality of the exercise of congressional taxing and spending power and due to the holding in *Flast* that the First Amendment Establishment Clause does specifically limit the taxing and spending power, the court finds plaintiff Wamble has "shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction." 392 U.S. at 103, 88 S.Ct. at 1954.

### Standing of Plaintiff-Intervenors to Raise A Claim Arising Under the First Amendment

While plaintiff-intervenors have joined in Wamble's complaint and have raised no additional issues, their status as litigants is not the same as that of taxpayer Wamble. Defendants would have this court apply the analytical formula of *Flast* to the plaintiff-intervenors. In *Duke Power,* the Supreme Court rejected the notion that "the nexus requirement formulated in the context of taxpayer suits has general applicability in suits of all other types brought in the federal courts." 438 U.S. at 78, 98 S.Ct. at 2633.

Certainly if taxpayer Wamble meets the nexus requirements, then so do the plaintiff-intervenors who are also taxpayers. Although *Valley Forge* has disapproved an expansion of citizen standing, the parents' status is different than that of citizens because they satisfy the requirement of injury in fact by alleging two distinct harms: 1) the expenditure of Title I funds in nonpublic schools directly reduces the funds available to public school students—their children; and 2) the utilization of the Title I funds in nonpublic schools is a violation of the Establishment Clause. "A person or a family may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and the Free Exercise Clause." *Association of Data Processing Service Organization, Inc. v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

The second step in the standing analysis is to establish the causal relationship between the plaintiff-parents' injuries and the action of the defendants. "This constitutional criterion, does not require absolute certainty or proven fact, for to do so would transform an inquiry of standing into a determination of the merits." *School District of Kansas City v. State of Missouri,* 460 F.Supp. 421, 438 (1978). The causal connection here is readily discernable since the injuries which plaintiff-intervenors have asserted result from the federal defendants disbursement of federal monies to nonpublic schools.

The third question which this court must answer is whether there is a "substantial likelihood" that the requested relief will redress the injury. The complaint seeks both a declaration of the unconstitutionality of the Title I by-pass provisions and an injunction to prevent the federal defendants' administration of the by-pass. A judgment on the merits of the issues raised by plaintiff and plaintiff-intervenors will have to address the relief requested and there is a substantial likelihood that the issuance of a declaratory judgment for plaintiff-intervenors would rectify the wrongs of which the parents complain.

Finally, the Supreme Court has said that the source of the plaintiff's claim becomes critical in the context of the prudential rules of standing, which, apart from the Art. III minimum requirements, circumscribe the role of the courts in resolving public disputes:

> Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Warth*, 422 U.S. at 500, 95 S.Ct. at 2205. The plaintiff-intervenors' claim is clearly attributable to the concerns expressed in the Establishment Clause of the First Amendment and, therefore, the court finds that the parents have standing to challenge the constitutionality of the Title I by-pass statute and its operation.

*Plaintiffs' Standing to Raise a Claim Arising Under the Fifth Amendment*

The federal defendants maintain that neither plaintiff Wamble nor plaintiff-intervenors have standing to raise a Fifth Amendment claim of deprivation of property without due process of law. They direct the court's attention to *Flast* which states, "the Due Process Clause of the Fifth Amendment does not protect taxpayers against increases in tax liability." 392 U.S. at 105, 88 S.Ct. at 1955. Plaintiff Wamble's response focuses on the liberty concept inherent in the Fifth Amendment and the precedents which link that "liberty" to the "religious liberty" guaranteed by the First Amendment, and refers the court to *Cantwell v. State of Conn.*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), and *Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975). The plaintiff-intervenors also rely upon the "religious liberty" amalgamation to provide Fifth Amendment standing.

Although *Flast* identified only the First Amendment Establishment Clause as a specific limit on the taxing and spending power of Congress, the opinion left open the question of "whether the Constitution contains other specific limitations." 392 U.S. at 105, 88 S.Ct. at 1955. The court did not speak to the interrelationship, if any, between First Amendment religious liberty and Fifth Amendment religious liberty. A comment in the most recent progeny of *Flast, Valley Forge College*, —— U.S. ——, 102 S.Ct. 752, 70 L.Ed.2d 700, does leave the implication, however, that this court may consider plaintiff Wamble's Fifth Amendment claim once taxpayer standing is established:

> Article III obligates a federal court to act only when it is assured of the power to do so, that is, when it is called upon to resolve an actual case or controversy. Then, and only then, may it turn its attention to other constitutional provisions and presume to provide a forum for the adjudication of rights.

*Valley Forge*, —— U.S. ——, ——, n.13, 102 S.Ct. 752, 760, n.13, 70 L.Ed.2d 700.

As to the plaintiff-intervenors' allegation that their Fifth Amendment rights have been violated by defendants' action, it would be redundant to apply the tripartite formula for nontaxpayer, constitutional standing to the Fifth Amendment claim. The court in *Duke Power* indicated that all "putative injuries" do not have to be "sufficiently concrete to satisfy constitutional requirements." 438 U.S. at 73, 98 S.Ct. at 2630. In *Duke Power*, as in this case, the court found that certain of the plaintiffs' injuries were sufficiently concrete to confer standing. The court did acknowledge that there may be "other limits on the class of persons who may invoke the courts' decisional and remedial powers." 438 U.S. at 80, 98 S.Ct. at 2634 (quoting *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205). *Duke Power* declined to impose those prudential limitations "[w]here a party champions his own rights, and where the injury alleged is a concrete and particularized one which will be prevented or redressed by the relief requested, [because] the basic practical and prudential concerns underlying the standing doctrine are generally satisfied when the constitutional requisites are met." 438 U.S. 80–81, 98 S.Ct. at 2634.

Therefore, this court concludes that plaintiff Wamble and plaintiff-intervenors have standing to assert a cause of action under the Fifth Amendment.

*Plaintiffs' Standing to Raise a Claim Arising Under the Tenth Amendment*

■ The federal defendants dispute the plaintiffs' standing to assert the portion of the complaint which is based on the Tenth Amendment. The prayer is that this court declare the Title I by-pass to be violative of the Tenth Amendment. The ability of a taxpayer to assert a Tenth Amendment claim alleging a congressional violation of the legislative province of the states has been vitiated by the United States Supreme Court. *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). *Flast* reviewed *Frothingham*, applied the second prong of the nexus test to the facts there, and obtained the same result—the Tenth Amendment does not constitute a specific limitation upon congressional taxing and spending power. 392 U.S. at 105, 88 S.Ct. at 1955. Hence, plaintiff Wamble, who may only invoke this court's jurisdiction qua taxpayer, is without standing to raise a Tenth Amendment claim.

The plaintiff-intervenors attempted assertion of a cause of action under the Tenth Amendment is also impermissible. An application of the entire test for constitutional standing is not necessary because the prudential limitations on standing create an insurmountable obstacle. Those prudential limitations serve to insure that the plaintiff is not only an aggrieved party but also the most effective advocate of the issues. The Supreme Court has "held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205. Although the court has created some exceptions which permit the assertion of the rights of third parties (known as jus tertii), none of those exceptions is appropriate here where the assertion of those rights would come with "great cognizancy" from the State of Missouri itself.

*Singleton v. Wulff*, 428 U.S. at 114, 96 S.Ct. at 2874. Thus, this court finds that the plaintiff-intervenors are not proper parties to assert a violation of the Tenth Amendment.

*Reviewability*

The final objection made by federal defendants pertains to plaintiffs' ability, or lack thereof, to challenge the invocation of the by-pass provision found in 20 U.S.C. § 2740(b). Defendants' two-pronged attack is directed first at plaintiffs' lack of standing and then at the unavailability of a private right of action under that statute.

To clarify the issues involved in this section, the court will utilize the approach advocated by Justice Brennan in his opinion which concurred with the result of, but dissented from the reasoning applied by the majority in, the companion cases of *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). When agency action is being challenged, Justice Brennan encouraged the lower court to distinguish between standing and reviewability. He indicates that the court must inspect relevant statutory material in those cases challenging agency action, "[b]ut the canvass [of statutory material] is made, not to determine *standing*, but to determine an aspect of *reviewability*, that is, whether Congress meant to deny or to allow judicial review of the agency action at the instance of the plaintiff." 397 U.S. at 169, 90 S.Ct. at 839 (emphasis in original).

The statutory material which is the focal point of the federal defendants' argument is the section of 20 U.S.C. which permits the participation in Title I of children enrolled in private schools. Defendants recite the provisions of 20 U.S.C. § 2740(b) which allow state and local educational agencies to dispute and appeal the "Commissioner's" decision to invoke the by-pass and they review the legislative history of the section. Defendants submit that by providing review for state and local educational agen-

cies Congress intended to exclude all other methods of review. The defendants ignore the effect of the Administrative Procedure Act (5 U.S.C. § 701 *et seq.*) upon the availability of judicial review of the Secretary's decision under Section 2740. Instead, defendants conclude their argument with a discussion of whether plaintiffs have an implied or private right of action to challenge the Secretary's implementation of the bypass. The cases (*Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)) upon which defendants rely offer this court little assistance since the cases upon which defendants rely involve the attempted enforcement by a private party of a federal statute which does not by its terms provide for private enforcement and those cases do not address the right of an individual to seek review of an agency decision to apply a statutory provision.[1]

The Supreme Court has clarified the usage of the Administrative Procedure Act by litigants challenging agency action. *Data Processing* construed the requirements for standing under 5 U.S.C.A. § 702 (West 1977).[2] "[T]he question [is] whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 829. As noted above, *Data Processing* recognized that the interest which is sought to be protected may reflect spiritual "as well as economic values." 397 U.S. at 154, 90 S.Ct. at 830.

The application of the "zone of interests" test enunciated in *Data Processing* requires this court to examine the connection between the claims asserted by plaintiff and plaintiff-intervenors and the Title I statutes.[3] That connection must be determined with respect to both plaintiff and plaintiff-intervenors. The first question presented, then, is whether plaintiff Wamble's interest in "religious liberty" is arguably within the zone of interest to be protected by 20 U.S.C. § 2740. Secondly, is the interest of the plaintiff-parents in the expenditure of federal monies in nonpublic schools which allegedly may result in a reduction of funds available for their children arguably within the zone of interests to be protected by the Title I statute?

In answering those questions, it is necessary to examine Title I in its entirety, as well as the specific statutory section relating to the by-pass. *Rodeway Inns of America, Inc. v. Frank*, 541 F.2d 759, 765 (8th Cir. 1976). *See, Barlow v. Collins*, 397 U.S. at 164–65, 90 S.Ct. at 836.

Section 2701 declares the policy for the Act which is entitled "Financial Assistance to Meet the Special Educational Needs of Children." That declaration recognizes the special educational needs of children of low-income families and the impact of concentrations of low-income families upon the ability of LEA's to provide sufficient educational programs. The statute states "the Congress hereby declares it to be the policy of the United States to provide financial assistance ... to local educational agencies serving areas with concentrations of children from low-income families to expand and improve their educational programs by various means ... which contribute partic-

---

1. The similarities and differences between the "implied right of action" cases and the rationale inherent in the zone of interest test, discussed infra, was recognized in *The Zone of Interest Component of the Federal Standing Rules: Alive and Well After All?* McKee, 4 U.Ark. Little Rock L.J. 261 (1981).

2. § 702 reads in part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The court notes that

its subject matter jurisdiction is not predicated upon the provisions of 5 U.S.C. § 702. *See Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).

3. Prior to performing the "zone of interest" analysis, the *Data Processing* court indicated that the litigants must have satisfied the Article III requirements. The court has already discussed those requirements as they are met by plaintiffs in the case at bar.

ularly to meeting the special educational needs of educationally deprived children." 20 U.S.C.S. § 2701 (Law.Co-op.1981). One of the general requirements stated in § 2740 regarding the participation of children enrolled in private schools is that "[e]xpenditures for educational services and arrangements pursuant to this section for educationally deprived children in private schools shall be equal (taking into account the number of children to be served and the special educational needs of such children) to expenditures for children enrolled in the public schools of the local educational agency." 20 U.S.C.S. § 2740(a).

The by-pass procedure created by § 2740(b) calls for the Secretary to determine that either an LEA is prohibited by state law from providing the equitable Title I services mandated in § 2740(a) or that an LEA substantially has failed to do so, as a condition precedent to his decision to arrange for the provision of remedial programs to private school students without the involvement of the LEA. Once the by-pass provision of § 2740 is invoked, either under subsection (1) or (2), the Secretary waives the requirements of subsection (a).

■ This court concludes from those statutory provisions that only the plaintiff-parents are within the zone of interest protected by Title I and only they have standing as persons "aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C.A. § 702.

The APA stipulates that its provisions which authorize judicial review apply "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C.A. § 701(a) (West 1977). "It is now well settled that 'judicial review of final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.'" *Morris v. Gressette*, 432 U.S. 491, 501, 97 S.Ct. 2411, 2418, 53 L.Ed.2d 506 (1977) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967)). Accord, *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Data Processing, Inc. v. Camp; Barlow v. Collins.* The court must ascertain whether "Congress has in express or implied terms precluded judicial review or committed the challenged action entirely to administrative discretion." *Barlow*, 397 U.S. at 165, 90 S.Ct. at 836.

■ The language of § 2740(b)(4)(B) which provides state and local educational agencies with entrée to the Court of Appeals does not state that the existence of this method of review for those local agencies precludes other aggrieved persons from seeking judicial review of action taken by the Secretary of Education. Where there is no express statutory preclusion, "it is necessary to determine 'whether nonreviewability can fairly be inferred.'" *Morris*, 432 U.S. at 501, 97 S.Ct. at 2418 (quoting *Data Processing*). A federal agency seeking to preclude judicial review "bears the heavy burden of overcoming the strong presumption that Congress did not mean to prohibit all judicial review" of its decisions. *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975).

Federal defendants have attempted to sustain that burden by referring the court to the Senate version of the proposed by-pass legislation which would have required the "Commissioner" to afford the LEA and "other interested parties notice and an opportunity for a hearing," prior to invoking the by-pass. Defendants' suggestions, at 24. Those words, "other interested parties," were not included in the bill which became § 2740. It is this court's opinion that the exclusion of those words from the final statute does not lead to a fair inference of nonreviewability; rather, it means that full notice and objection procedures were to be afforded only to those parties who share responsibility with the federal department for administration of the Title I program, that is, the state and local agencies. The court is not persuaded that Congress intended exclusion of the words "other interested parties" to cut off the judicial review sought here.

The second exception to judicial review found in § 701(a) pertains to those statutory schemes which commit particular agency action to its own discretion. Within the Title I context, the provision which allows state and local educational agencies to seek review in the Court of Appeals of the decision to invoke the by-pass statute militates against a conclusion that such a decision was intended to be committed "by law" to agency discretion. Thus, § 701(a)(2) has no applicability here.

 "The right of judicial review is ordinarily inferred where congressional intent to protect the interests of the class of which the plaintiff is a member can be found; in such cases, unless members of the protected class may have judicial review the statutory objectives might not be realized." *Barlow*, 397 U.S. at 167, 90 S.Ct. at 838. That inference of judicial review is particularly appropriate "when constitutional questions are in issue," and courts should not read a statutory scheme to take the " 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence." *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977) (cite omitted). Congressional intent to preclude judicial review is not manifested here by "clear and convincing" evidence.

Therefore, this court finds that the Title I statutory scheme is to be read as evincing a congressional intent that the parents of public school students who participate in Title I programs may seek judicial review of the Secretary's decision to invoke the by-pass of the state and local educational agencies.

Based on the reasons set forth above, it is hereby

ORDERED that the federal defendants' motion for partial judgment on the pleadings is granted as to the Tenth Amendment claims of plaintiff and plaintiff-intervenors. It is further

ORDERED that the federal defendants' motion for judgment on the pleadings is granted as to plaintiff Wamble's claim for judicial review of the decision to invoke the by-pass provision pursuant to 20 U.S.C. § 2740(b). It is further

ORDERED that the federal defendants' motion for judgment on the pleadings is denied as to the First Amendment claims of plaintiff and plaintiff-intervenors, the Fifth Amendment claims of plaintiff and plaintiff-intervenors, and the ability of plaintiff-intervenors to seek judicial review of the decision to invoke the by-pass provision pursuant to 20 U.S.C. § 2740(b).