# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1862
_____

Don Huizenga; Nancy Powell; Jim Bendtsen

*Plaintiffs - Appellants*

v.

Independent School District No. 11; Anoka Hennepin Education Minnesota,
(American Federation of Teachers Local 7007)

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 18, 2025
Filed: August 11, 2025

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge


Three residents sued a school district and teachers' union about their union leave and reimbursement plan, alleging constitutional and statutory violations. The district court granted summary judgment, ruling that the residents lacked Article III standing. They appeal. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

## I.

Don Huizenga, Nancy Powell, and Jim Bendtsen were residents and taxpayers of Independent School District No. 11 ("the district"). The collective-bargaining representative of its teachers is Anoka-Hennepin Education Minnesota ("the union"). Their agreement allows teachers to take, collectively, 100 days per year of paid leave to work for the union. The union must reimburse the district's costs for hiring substitute teachers during union leave. The union does not reimburse the district for the (higher) pro rata cost of salaries and benefits for teachers on union leave.

Disagreeing with the teachers' alleged political and campaign advocacy during union leave, the residents sued the union under 42 U.S.C § 1983. They alleged a violation of the Free Speech Clause. *See Janus v. AFSCME, Council 31*, 585 U.S. 878, 930 (2018). The residents also alleged violations of the Minnesota Constitution and the state Public Employee Labor Relations Act.

The district court dismissed the case for lack of standing. This court reversed and remanded. *Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 812 (8th Cir. 2022) (holding, at a threshold inquiry for a motion to dismiss, that the residents adequately alleged municipal taxpayer standing). On remand, the district court granted summary judgment, dismissing the residents' claims due to a lack of Article III standing. *Huizenga v. Indep. Sch. Dist. No. 11*, 727 F.Supp.3d 812, 820 (D. Minn. 2024). The residents appeal.

This court reviews both standing and grants of summary judgment de novo. *Heglund v. Aitkin Cnty.*, 871 F.3d 572, 577 (8th Cir. 2017) (standing); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (summary judgment).

## II.

"Article III restricts federal courts to the resolution of cases and controversies." ***Davis v. FEC***, 554 U.S. 724, 732 (2008). The party invoking federal jurisdiction has the burden to establish standing. ***Lujan v. Defs. of Wildlife***, 504 U.S. 555, 561 (1992). Only one plaintiff needs standing. ***Biden v. Nebraska***, 600 U.S. 477, 489 (2023). For standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." ***Spokeo, Inc. v. Robins***, 578 U.S. 330, 338 (2016). The injury in fact requires the plaintiff to show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" ***Id.*** at 339, *quoting* ***Lujan***, 504 U.S. at 560.

In general, the taxpayer's interest "in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing." ***Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.***, 509 F.3d 406, 419–20 (8th Cir. 2007), *quoting* ***Hein v. Freedom From Religion Found., Inc.***, 551 U.S. 587, 599 (2007). Municipal taxpayer standing is an exception to this general rule. *See* ***Frothingham v. Mellon***, 262 U.S. 447, 486–87 (1923) (decided with *Massachusetts v. Mellon*). Municipal taxpayer standing arises from the "peculiar" relationship of taxpayers to their municipality, like that "subsisting between stockholder and private corporation." ***Id.*** at 487. Because municipal taxpayers have a "direct and immediate" interest in municipal expenditures, they "may sue to enjoin an illegal use of the moneys of a municipal corporation." ***Id.*** at 486.

To have municipal taxpayer standing, a plaintiff (1) "must actually be a taxpayer of the municipality that she wishes to sue" and (2) "must establish that the municipality has spent tax revenues on the allegedly illegal action." ***Huizenga***, 44 F.4th at 811, *quoting* ***Protect Our Parks, Inc. v. Chicago Park Dist.***, 971 F.3d 722, 734 (7th Cir. 2020). At summary judgment, a plaintiff must support standing "with

sufficient probative evidence that would permit a finding in the plaintiff's favor." *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

A.

The residents must establish they are taxpayers of the municipality they are suing—in this case, the district. Huizenga and Bendtsen are municipal taxpayers of the district. They belong to a particular "taxpayer base" of district residents with a special "interest in the funds allocated to" the school district. *Huizenga*, 44 F.4th at 812.

Powell is no longer a municipal taxpayer of the district. After the complaint was filed, she moved away and no longer resides in the district. She cannot maintain claims for prospective injunctive relief. She asserts standing to seek a declaratory judgment and retrospective relief. However, the injury central to municipal taxpayer standing is the "misuse" of public funds by the municipality. *Frothingham*, 262 U.S. at 486. This "misuse," not any increase in taxes, allows resident taxpayers to "sue to enjoin an illegal use of the moneys" of a municipality. *Id.* An injunction against future misuse remedies the injury. *See D.C. Common Cause v. District of Columbia*, 858 F.2d 1, 8 (D.C. Cir. 1988) (noting that the request for restoration of moneys "would not redress the injury caused by past misuse of public funds"). Because Powell has left the taxpayer base, she cannot show a likelihood of future injury necessary to establish standing for declaratory and injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). There is "no danger" of her taxes "being spent in violation of the Constitution." *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 209 (6th Cir. 2011) (en banc) (holding that plaintiff lacked standing because he was no longer a taxpayer of the municipality), *cert. denied*, 565 U.S. 820 (2011). Powell does not have municipal taxpayer standing.

B.

The other two residents—who are municipal taxpayers—must establish that the district spends tax revenues on the activities complained of. The union argues that the residents are unable to demonstrate a "measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of." *Doremus v. Bd of Educ. of Hawthorne*, 342 U.S. 429, 434 (1952). The union emphasizes that it reimburses the district for the cost of substitutes for teachers taking union leave. It concludes that the residents have not established an injury in fact because the union leave provision causes no incremental expenditure.

That the union reimburses the one expense occasioned by the union leave policy is not decisive, because whether the policy increases or decreases total costs to the district does not matter. *See Smith*, 641 F.3d at 215. What matters is the "misuse" of the municipality's funds. *Frothingham*, 262 U.S. at 486. The union leave policy causes a direct expenditure of district funds, giving residents a direct interest as taxpayers. The residents meet the injury in fact requirement for Article III standing.

The district court relied on *Doremus v. Board of Education of Borough of Hawthorne*, 342 U.S. 429, 434–35 (1952), which addressed state taxpayer standing. The Court there held that state taxpayers have no standing based on taxpayer status alone. The Court's test was whether the state taxpayer "sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement." *Doremus*, 342 U.S. at 434, *quoting Frothingham*, 262 U.S. at 488. To satisfy this "direct injury" requirement, state taxpayers must bring a "good-faith pocketbook action." *Doremus*, 342 U.S. at 434. The circuits are split on whether the "good-faith pocketbook action" requirement extends to municipal taxpayer standing (advocated by the dissent). *See Smith*, 641 F.3d at 212–13 (summarizing the views of five other circuit courts).

For state taxpayer standing, this court has defined "a good-faith pocketbook action" as "an injury to the taxpayer's 'direct and particular financial interest.'" ***Booth v. Hvass***, 302 F.3d 849, 852 (8th Cir. 2002), *quoting **Doremus***, 342 U.S. at 434–35. But this court has not interpreted *Doremus* to require a taxpayer to show an increase in her tax bill. *See **Minnesota Fed'n of Teachers v. Randall***, 891 F.2d 1354, 1356–57 (8th Cir. 1989). *Cf.* ***D.C. Common Cause***, 858 F.2d at 5 (applying *Doremus* to municipal taxpayer standing but requiring only "a measurable appropriation of public funds" for the injury requirement to be satisfied). Thus, to the extent that the "good-faith pocketbook action" requirement applies to municipal taxpayer standing, the requirement for taxpayers to show a "direct and particular financial interest" applies only so far as the taxpayer's interest is defined in *Frothingham*. The Court there held that the "interest of a taxpayer of a municipality in the application of its moneys is direct and immediate." ***Frothingham***, 262 U.S. at 486. This comes from the "peculiar relation of the [municipal] taxpayer to the [municipality], which is not without some resemblance to that subsisting between stockholder and private corporation." ***Id.*** at 487. "Like a shareholder of a private corporation, a municipal taxpayer has an immediate interest in how the municipality spends resources that reflect his contributions." ***Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.***, 567 F.3d 278, 285 (6th Cir. 2009), *citing **Frothingham***, 262 U.S. at 487. Generally, shareholders may bring derivative suits for knowing violations of the law even when the unlawful actions profit the corporation. *See* ***Metro Commc'n Corp. BVI v. Advanced Mobilecomm Technologies Inc.***, 854 A.2d 121, 131 (Del. Ch. 2004). Analogously, the unconstitutional spending of taxpayer money is itself an injury to the municipal taxpayer. *See* ***D.C. Common Cause***, 858 F.2d at 5 ("The injury—misuse of public funds—is redressed by an order prohibiting the expenditure."); ***Cammack v. Waihee***, 932 F.2d 765, 772 (9th Cir. 1991) (same). All a taxpayer—"in his capacity as a district taxpayer"—needs to show is "a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of." ***Doremus***, 342 U.S. at 434 (second quotation); ***Everson v. Bd. of Educ. of Ewing Twp.***, 330 U.S. 1, 3 (1947) (first quotation); *see also* ***Pulido v. Bennett***, 848 F.2d 880, 886 (8th Cir. 1988)

(denying state and municipal taxpayer standing when "no state or local tax funds" were used in the illegal activity).

If some expenditure is paid by local taxpayer dollars, municipal taxpayers do not have to show an overall "depletion of the public fisc." *Smith*, 641 F.3d at 215. In municipal "expenditure cases," plaintiffs "complain not that the government, having spent certain money, might demand more of them, but rather that it has misspent what it has already collected." *Id.* at 214–15. "In sum, the rule that plaintiffs must show depletion of the public fisc in order to access the courts has no foundation, explicit or implied, in the binding decisions of the Supreme Court." *Id.* at 215.

Here, the residents argue that the leave agreement forces municipal taxpayers to subsidize a union's political speech in violation of their First Amendment rights. *See Janus*, 585 U.S. at 920. The district makes an expenditure when it pays substitute teachers while full-time teachers take paid union leave to engage in political and campaign advocacy. The expenditure is solely occasioned by the activities complained of. Even though the union reimburses the cost of the substitute teacher, the residents have a "direct pecuniary injury" because their taxes directly support the activities complained of. *Doremus*, 342 U.S. at 434. The union notes that the residents alleged that the school district spends tax revenues "and the union does not fully reimburse that expense." *Huizenga*, 44 F.4th at 812. But the holding there was that, at that stage in the litigation, the residents satisfied their burden to establish standing. Here, because the residents have supported their allegation that the school district expends taxpayer funds on the activities complained of, they satisfy their burden at this stage as well.

The union also argues that any costs expended by the district are "ordinary costs" associated with operating a school district. *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 794 (9th Cir. 1999) (en banc) (denying municipal taxpayer standing because the school district spent tax dollars on "ordinary costs of graduation that the school would pay" with or without the unconstitutional activity). Paying a

substitute teacher may be an "ordinary" cost of the school district. But the spending the residents challenge is the payment of substitutes for teachers taking union leave. Here, the challenged expenditure of funds is not ordinary because it is "occasioned solely by the activities complained of." *Doremus*, 342 U.S. at 434.

C.

The union argues that municipal taxpayer standing requires a "fairly traceable" element, that the residents show their municipal taxpayer dollars are uniquely implicated. *See Spokeo*, 578 U.S. at 338. Teachers' salaries are paid from the district's General Fund. It intermingles state, federal, and local funds. Local taxes are around 18 percent of the General Fund. The union concludes that the residents cannot show that the expenditures from the union leave policy are "uniquely attributable" to local tax dollars.

The union relies on *Protect Our Parks, Inc. v. Chicago Park District*, 971 F.3d 722, 734–36 (7th Cir. 2020). That court held that municipal taxpayers must show that municipal tax dollars are being spent on the illegal activities. *Id.* at 735 ("It is not enough to simply allege that the City is spending money; the existence of municipal taxpayer standing depends on where the money comes from."), *approved in Woodring v. Jackson Cnty., Ind.*, 986 F.3d 979, 985 (7th Cir. 2021). The plaintiffs in *Protect Our Parks* failed to show that the activity complained of would be paid for with municipal taxes, since "nearly a third of the City's revenue comes from nontax sources." *Protect Our Parks*, 971 F.3d at 735. Other circuits disagree. *See D.C. Common Cause*, 858 F.2d at 11 (finding municipal taxpayer standing even when the only expenditures were from funds appropriated by Congress); *Cammack*, 932 F.2d at 771 (finding municipal taxpayer standing where plaintiffs asserted that "state and municipal tax revenues" pay for the activity complained of).

In *Frothingham*, the Court analogized municipal taxpayers to the stockholders of a corporation. *Frothingham*, 262 U.S. at 487. A stockholder's legal interest in the corporation's management of its funds is not diluted by outside funds. *See, e.g.*,

***Koster v. (Am.) Lumbermens Mut. Cas. Co.***, 330 U.S. 518, 523–24 (1947) (holding that shareholders with "only a small financial interest" in the corporation may still bring a derivative suit if they satisfy other procedural and jurisdictional requirements). Likewise, the residents' direct and immediate interest in school district expenditures is not diluted where the General Fund contains municipal, state, and federal funds. Municipal taxpayer standing allows taxpayers to challenge the misuse of municipal funds. Intermingled funds are still "resources that reflect [the taxpayer's] contributions." ***Am. Atheists, Inc.***, 567 F.3d at 285. The residents meet any traceability requirement.[1]

III.

Huizenga and Bendtsen meet their burden of establishing Article III standing. They are municipal taxpayers of the district, and they show an expenditure of district funds occasioned solely by the activities complained of.

The district court did not address the residents' claims on the merits. This court is "a court of appellate review, 'not of first view.'" ***MPAY Inc. v. Erie Custom Comput. Apps., Inc.***, 970 F.3d 1010, 1021 (8th Cir. 2020). If a district court has not addressed an issue, we ordinarily remand to give that court an opportunity to rule in the first instance. ***Fergin v. Westrock Co.***, 955 F.3d 725, 730 n.3 (8th Cir. 2020).

* * * * * * *

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

---

[1]The dissent adds that Huizenga and Bendtsen lack standing because funds are not expended "*on the allegedly illegal elements* of the disputed practice." ***Protect Our Parks, Inc.***, 971 F.3d at 735. But this adds a requirement for municipal taxpayer standing that is not found in the decisions of the Supreme Court. To the extent that *Doremus* applies to municipal taxpayer standing, it requires only an expenditure of municipal funds "occasioned solely by the activities complained of." ***Doremus***, 342 U.S. at 434.

SHEPHERD, Circuit Judge, dissenting.

I respectfully dissent. In my view, the plaintiff taxpayers have failed to "show that the [district] has actually expended funds *on the allegedly illegal elements* of the disputed practice." See Protect Our Parks, Inc. v. Chi. Park Dist., 971 F.3d 722, 735 (7th Cir. 2020) (Barrett, J.) (quoting Nichols v. City of Rehoboth Beach, 836 F.3d 275, 282 (3d Cir. 2016)), cert. denied, 141 S. Ct. 2538 (2021). Thus, I would hold that the plaintiffs lack standing and affirm the district court.

Two theories have been advanced in this case to establish municipal taxpayer standing. First, the plaintiffs assert they have standing because, as taxpayers, they have been compelled to subsidize the union's political speech and activity. They argue that because the district rents out its teachers to the union at the rate required to hire a substitute for each teacher rather than at the full amount of any given teacher's "per diem salary"—i.e., the amount, based on the teacher's salary, that a given teacher makes per day of teaching—the taxpayers are footing the bill for teachers' subsidized contributions to union activities. Alternatively, the panel determines municipal taxpayer standing exists under a slightly different theory. Ignoring the subsidy concept, the panel holds that the plaintiffs have standing because the district expends funds to pay for the substitute teachers, an expense, it argues, that is "occasioned solely by" the union activities. See ante, at 7 (citation omitted).

The plaintiffs' theory fails for lack of an expenditure. Because municipal taxpayer standing requires a plaintiff to "establish that the municipality has spent tax revenues on the allegedly illegal action," see Huizenga v. Indep. Sch. Dist. No. 11, 44 F.4th 806, 811 (8th Cir. 2022) (citation omitted), courts have generally looked for an expenditure or appropriation of municipal funds in order to find such standing, see, e.g., Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs, 641 F.3d 197, 214 (6th Cir. 2011) (en banc). But see Hawley v. City of Cleveland, 773 F.2d 736, 741-42 (6th Cir. 1985) (holding standing existed where the challenged activity involved a loss of revenue to the municipality's general fund). Under the subsidy theory, the district

is essentially offering the union a discounted rate on its teachers, but it is not expending or appropriating money for union activities.

The panel's alternative theory is similarly inadequate. In my view, the panel's approach errs both in rejecting the requirement of a "direct dollars-and-cents injury," see Doremus v. Bd. of Educ., 342 U.S. 429, 434 (1952), and in disregarding the disconnect between the expenditure and the allegedly illegal action.

First, this Court errs by holding that the alleged misuse of a municipality's funds—even without any "direct dollars-and-cents injury," id.—is sufficient to establish municipal taxpayer standing. See ante, at 5. Explaining this error requires a brief history of the municipal taxpayer standing doctrine. More than 100 years have passed since the Supreme Court noted its approval of the municipal taxpayer standing doctrine in Frothingham. See 262 U.S. at 44; see also Crampton v. Zabriskie, 101 U.S. 601, 609 (1879) (holding there was "no serious question" about the rights of taxpayers to sue "to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they . . . may otherwise be compelled to pay"). In the century since, the Supreme Court has barely addressed municipal taxpayer standing. See Protect Our Parks, 971 F.3d at 733. However, it has addressed taxpayer standing more generally, including the standing of a taxpayer to sue a local governmental entity for enforcing an allegedly impermissible state statute. See Doremus, 342 U.S. at 430. In Doremus, the Court determined that a state taxpayer plaintiff must show that "the taxpayer's action . . . is a good-faith pocketbook action," or, in other words, that the plaintiff has "the requisite financial interest that is, or is threatened to be, injured by" the illegal government conduct. Id. at 434-35. While Doremus undoubtedly applies to state taxpayer standing, see DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006), circuits are split over whether it applies to municipal taxpayer standing, see, e.g., Protect Our Parks, 971 F.3d at 734 (applying Doremus in analyzing municipal taxpayer standing); Smith, 641 F.3d at 212-13 (discussing approaches in other circuits).

I believe <u>Doremus</u> provides clarification on taxpayer standing generally and would thus apply it in the municipal taxpayer context.  As other judges have noted, though the Supreme Court has significantly developed standing principles generally, the municipal-taxpayer standing doctrine has "stood still."  <u>See</u> <u>Smith</u>, 641 F.3d at 221-23 (Sutton, J., concurring); <u>see also</u> <u>Protect Our Parks</u>, 971 F.3d at 733 (describing the rule as "increasingly anomalous").  In light of the "substantial body of law vigorously enforcing the principle that injuries cognizable under Article III cannot be 'generalized,' 'undifferentiated,' or insufficiently 'particularized,'" <u>see</u> <u>Protect Our Parks</u>, 971 F.3d at 733 (citation omitted), it is incongruous to turn a blind eye to <u>Doremus</u> and to hold that any misuse of funds—even one that has no effect or has a *positive* effect on the public fisc—provides a taxpayer with standing.  This reading is consistent with <u>Frothingham</u>, under which it is presumed the doctrine applies only when the taxpayer's interest in the municipality's expenditure is "direct and immediate."  <u>See</u> <u>United States v. City of New York</u>, 972 F.2d 464, 470 (2d Cir. 1992) (citation omitted); <u>see also</u> <u>Frothingham</u>, 262 U.S. at 486.  It is also consistent with <u>Frothingham</u>'s analogy to shareholders and a corporation, as corporate shareholder standing is likewise limited.  <u>See, e.g.</u>, <u>Taha v. Engstrand</u>, 987 F.2d 505, 507 (8th Cir. 1993) ("Shareholders . . . may not bring individual actions to recover what they consider their share of the damages suffered by the corporation.").  And more recently, a plurality of the Supreme Court suggested municipal taxpayer standing should not be applied too broadly.  <u>See</u> <u>ASARCO Inc. v. Kadish</u>, 490 U.S. 605, 613 (1989); <u>see also</u> <u>Protect Our Parks</u>, 971 F.3d at 734.  Though it "is the [Supreme] Court's job, not ours" to amend the municipal taxpayer standing doctrine, <u>see</u> <u>Protect Our Parks</u>, 971 F.3d at 734, we need not ignore the Court's standing jurisprudence or consider this case in complete isolation.  Thus, I would apply <u>Doremus</u> in this case and hold that, in the absence of a "direct dollars-and-cents injury" to the public fisc, the taxpayer plaintiffs cannot establish standing.

The panel comes to the opposite conclusion by relying on <u>Smith</u>, which similarly rejected an application of <u>Doremus</u> to municipal taxpayer standing.  <u>See</u> <u>ante</u>, at 5-6.  But even if we were to assume the Sixth Circuit's decision in <u>Smith</u> is correct, the facts in <u>Smith</u> are distinguishable from those at hand.  In <u>Smith</u>,

taxpayers challenged the school district's decision to close its alternative school and to instead contract with an existing private alternative school that had some religious affiliations. 641 F.3d at 202-03. Because the school district's decision *saved* the district money, the district argued that plaintiffs did not have standing because the taxpayers failed to establish any depletion of the municipal fisc as a result of the governmental action. Id. at 210-11. The Sixth Circuit rejected this argument, declined to apply Doremus in the municipal taxpayer standing context, and determined that the taxpayers were not required to show that the government act "shr[a]nk[] the public treasury in order to establish standing" because taxpayer standing "will not turn on whether it was a bargain to violate the Constitution." Id. at 211.

Here, however, the union reimburses the school district dollar-for-dollar for its substitute-teacher expenditures. Thus, this Court need not be concerned with the "implementation problems" that worried the Smith majority, such as "[d]etermining whether a municipality 'lost' or 'saved' money." See id. 215. Here, every year, the school district comes out even because every day a teacher is at work in each classroom and the union directly reimburses all associated costs to hire substitutes. The government does not "evade suit simply because it was cheaper to violate the Constitution," see id., it evades suit because the taxpayers have failed to show an injury, cf. Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 482 (1982) ("Art[icle] III requirements of standing are not satisfied by 'the abstract injury in nonobservance of the Constitution asserted by . . . citizens." (alteration in original)).

Even if I shared the majority's view of the Doremus question, however, I would still hold the plaintiffs lack standing because they have failed to "show that the municipality has actually expended funds *on the allegedly illegal elements* of the disputed practice." See Protect Our Parks, 971 F.3d at 735 (citation omitted). By the panel's analysis, the expenditure in this case is the payment for substitute teachers. Ante, at 7. But it is not the hiring of substitute teachers that the plaintiffs take issue with, but rather the renting out of regular full-time teachers, at an allegedly

subsidized price, to conduct union-related business.  See Appellant Br. 30. Presumably, that is why the plaintiffs argued this under a subsidy theory.  Given that the allegedly illegal conduct is the renting out of teachers at a subsidized rate for union work, and taxpayer dollars are not being spent on that, the plaintiffs' municipal taxpayer standing argument should fail.  The Seventh Circuit addressed a similar issue in Protect Our Parks, 971 F.3d at 735.  In that case, the plaintiff taxpayers took issue with the construction of a presidential center in a park.  Id.  Construction of the center was being funded by a foundation, not by the city, but the city was still "set to spend millions of dollars to prepare the . . . site for construction."  Id.  Though preparation for construction was presumably occasioned by construction of the center itself, the Seventh Circuit rejected the plaintiff taxpayer's argument, determining that because "no tax dollars will be spent to build or operate the Center"—the allegedly illegal activity—the plaintiffs lacked standing.  Id.  Likewise here, the allegedly illegal activity is not the hiring of substitutes, but the renting out of full-time teachers for union activities during the school day.  Because the district does not expend funds on that allegedly illegal element of the disputed practice, that is sufficient to defeat the plaintiffs' standing.  See id.

Finally, because I would deny the plaintiffs standing on the above grounds, I would decline to reach the traceability question.  See ante, at 7-8.  Thus, I respectfully dissent.

_____